# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DEBORAH BUSTAMANTE,

    Plaintiff,

vs.  No. 00cv0274 JP/JHG

JOANNE B. BARNHART,[1]
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Bustamante's) Motion to Reverse or Remand Administrative Decision, filed November 2, 2000. The Commissioner of Social Security issued a final decision denying Bustamante's application for disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is not well taken and recommends that it be DENIED.

Bustamante, now forty-nine years old, filed her application for disability insurance benefits and supplemental security income on February 28 and February 13, 1997, respectively, alleging disability since November 30, 1996, due to back problems. She has a high school education with past relevant work as a waitress and as an accounting clerk. On February 11, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Bustamante had "severe

---

[1] On November 9, 2001, JoAnne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

limitations associated with status post L4-5 fusion and moderate obesity" but did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. Tr. 21. The ALJ reviewed Listing 1.05(1) & (2) and found Bustamante did not meet the requirements of this Listing. The ALJ further found Bustamante retained the residual functional capacity (RFC) for a wide range of light work.[2] Tr. 21. As to her credibility, the ALJ found Bustamante was not a credible witness. *Id.* Bustamante filed a Request for Review of the decision by the Appeals Council. On February 2, 2000, the Appeals Council denied Bustamante's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Bustamante seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

2

Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand, Bustamante makes the following arguments: (1) the ALJ erred in finding her medical condition did not meet Listing 1.05C; (2) the ALJ erred in his assessment of credibility; and (3) the ALJ erred in finding she could perform past relevant work.

Bustamante claims her back condition meets Listing 1.05C. Listing 1.05C states:

C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and
2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Bustamante relies on Dr. Rivera's Physician Questionnaire which he submitted on July 8, 1997. Tr. 250-52. In this questionnaire, Dr. Rivera, Bustamante's treating physician, indicated Bustamante met the requirements of Listing 1.05C. Tr. 252. On December 6, 1996, Dr. Rivera submitted a "To Whom It May Concern Letter" stating Bustamante suffered from severe and sometimes incapacitating back pain with radiculopathy and opined that Bustamante could not perform her current job or any type of gainful activity in the future. Tr. 229. On March 28, 1997, Dr. Rivera submitted another "To Whom It May Concern Letter" stating Bustamante suffered from severe, incapacitating back pain and opined she was unable to be involved in gainful activity.

4

Tr. 225. Dr. Rivera is not an orthopedist.

The ALJ did not give controlling weight to Dr. Rivera's opinion because his opinion was not "supported by complete and specific clinical findings" and was "inconsistent with other evidence as to the severity and probable duration" of her impairment. Tr. 19. In support of this finding, the ALJ cited to Dr. Castillo's report. Dr. Castillo, an orthopedist, evaluated Bustamante at Dr. Rivera's request on December 4, 1996. Dr. Castillo performed a physical examination and reported Bustamante: (1) had a normal gait; (2) her heel and toe walk were normal without evidence of gross weakness; (3) was unable to squat due to **perceived pain**; (4) carried her weight equally between the right and left lower extremities; (5) her posture was normal without any evidence of increased thoracic kyphosis, lumbar lordosis, or scoliosis; (6) was unable to go through range of motion of the lumbar spine due to **perceived** pain; (7) deep tendon reflexes were absent at the knees and absent at the ankles; (8) toes were downgoing without evidence of clonus; (9) leg lengths were equal; (10) there was no gross atrophy from the right to left side; (11) muscle strength testing was grossly grade 5/5 in all motor groups in both lower extremities; (12) sitting sciatic stretch tests were negative; (13) her supine sciatic stretch test was positive at less than 30 degrees in the left lower extremity which was **non-physiologic**; (14) her sensation was decreased in the left lower extremity in the L4 and L5 distribution which was **non-physiolgic**; (15) she was unable to do a spring test due to **perceived** pain; and (16) the hips were taken through a full and symmetric range of motion with no discomfort. Tr. 220. Significantly, Dr. Castillo found Bustamante's "Waddels[3] [were] essentially 5/5 for displaying increased response to pain behavior

---

[3] Gordon Waddel's five "non-organic pain" signs include:(1) overreaction during the physical examination; (2) simulated testing which is positive when pain is reported with axial loading (pressing on top of the head) or rotation with the pelvis and shoulders in the same plane;

5

and consist[ed] of tenderness, simulation, distraction, regionality and overreaction." *Id.* Dr. Castillo indicates in his report that he reviewed hip and pelvic films and found them negative. *Id.* Dr. Castillo also took some lumbar spine films and found a solid fusion at the L4-5 level with posterior instrumentation. *Id.* Dr. Castillo assessed Bustamente as (1) status post L4-5 fusion, which appeared to be solid; (2) marked symptom magnification; and (3) moderate obesity. Dr. Castillo opined that from an orthopedic surgical standpoint Bustamante's condition was stable. Tr. 221. Dr. Castillo recommended rehabilitation and pain management but saw no need for any type of further diagnostic workup. Tr. 221, 222.

Dr. Rivera examined Bustamante on several occasions. On February 14, 1994, Dr. Rivera saw Bustamante for persistent back pain. Tr. 249. He noted he did not perform an examination and prescribed pain medication and diazepam. *Id.* On August 3, 1994, Dr. Rivera examined Bustamante and noted "very tender back" and prescribed diazepam. Tr. 248. Dr. Rivera also recommended she follow-up with Dr. Erasmus. *Id.* His notes do not indicate he examined her. On November 7, 1994, Dr. Rivera saw Bustamante for back pain and noted "tender lumbar area as well as right buttock." Tr. 247. Dr.Rivera prescribed Nubain 10 mg, intramuscularly, pain pills, and diazepam. *Id.* Dr. Rivera also referred Bustamante to Dr. Erasmus and ordered x-rays. *Id.* On December 28, 1994, Dr. Rivera saw Bustamante for severe back pain and prescribed

---

(3) distracted testing– test straight leg raise while distracted when sitting, for example, knee in sitting position while appearing to be performing a Babinski reflex); (4) superficial, nonanatomical or variable tenderness– when skin rolling over the back markedly increases the pain (marked of areas of tenderness are later examined for reproducibility); (5) nonanatomical motor or sensory disturbances– positive when sensory loss does not follow a dermatome or entire leg is numb or without strength or when there is a ratchety giveaway on strength testing. Presence of two or more of these findings correlates with poor surgical outcome, but not rehabilitative outcome. *Journal of Disability,* April 1997 Vol. 6, No. 2, page 7.

Demerol. Tr. 232. On November 13, 1996, Dr. Rivera examined Bustamante for "some left hip pain" she had developed for no obvious reason and noted she had a negative back exam with no radiation and some painful range of motion to the left hip. Tr. 230. On that day, Dr. Rivera ordered x-rays of the pelvis and left hip which were negative. Tr. 231.

A treating physician may offer an opinion about a claimant's condition and about the nature and severity of any impairments. *Castellano v. Secretary of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). However, to be given controlling weight, the opinion must be "well supported by clinical and laboratory diagnostic techniques and [cannot be] inconsistent with other substantial evidence in the record." *Id.* A treating physician's opinion that his patient is disabled is not dispositive, as final responsibility for determining disability rests with the Commissioner. *Id.* Unless good cause is shown to the contrary, the Secretary must give substantial weight to the testimony of the claimant's treating physician. If the opinion of the claimant's physician is to be disregarded, specific legitimate reasons for this action must be set forth. *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984). Additionally, the opinions of specialists related to their area of specialty are entitled to more weight than that of a physician who is not a specialist in the area involved. See 20 C.F.R. § 404.1527(d)(5).

Having reviewed the record, the Court finds the ALJ did not err in not giving controlling weight to Dr. Rivera's medical assessment of disability. In this case, the ALJ gave legitimate reasons for disregarding Dr. Rivera's opinion. Dr. Rivera's medical assessment of disability is not supported by the medical evidence in the record and is inconsistent with Dr. Castillo's expert opinion. The Court further finds the ALJ finding that Bustamante's medical condition did not meet Listing 1.05C is supported by substantial evidence.

Bustamante next contends the ALJ erred in concluding her testimony was not credible. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). In his February 11, 1998 Decision, the ALJ found Bustamante not credible for several reasons. The ALJ considered her subjective complaints of pain and cited to the record to support his credibility determination. Having reviewed the record, the Court finds substantial evidence supports the ALJ's credibility determination.

Finally, Bustamante claims the ALJ erred in finding she could perform her past relevant work as an accounting clerk. At step four, a claimant bears the burden of proving that her medical impairments prevent her from performing work that she has performed in the past. *See Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988). However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations. *See* SSR 96-8p, SSR 82-62, 1982 WL 31386 at *4, see also *Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir.1996).

In this case, the ALJ relied on a vocational expert (VE) who was present throughout the administrative hearing. The ALJ also relied on Dr. Nickerson's August 27, 1996 RFC assessment

8

and Dr. Morgan's March 25, 1997 RFC assessment. Tr. 210-217, 233-240. Dr. Nickerson and Dr. Morgan, nonexamining agency physicians, reviewed the medical records and opined Bustamante could sit about six hours in an eight hour day. Tr. 211. Social Security Ruling 96-6p states that findings regarding the nature and severity of an impairment made by state agency consultants and other program physicians and psychologists "must be treated as expert opinion evidence of nonexamining sources." SSR 96-6p, 1996 WL 374180, at *1.

Bustamante argues the ALJ erred in relying on Dr. Nickerson's and Dr. Morgan's RFC assessments in his hypothetical question to the VE because Dr. Rivera had restricted her "to sitting a maximum of two hours at a time up to a maximum of two hours total in an eight hour day." Pl.'s Mem. in Supp. of Mot. to Reverse or Remand at 12. Dr. Nickerson and Dr. Morgan opined Bustamante could sit "about 6 hours in an 8-hour workday." Tr. 211, 234. However, the ALJ discounted Dr. Rivera's opinion and relied on Dr. Nickerson's and Dr. Morgan's RFC assessments instead. Because the ALJ gave specific legitimate reasons for discounting Dr. Rivera's opinion, it was proper for him to rely on the agency physicians' RFC assessments.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and his decision is supported by substantial evidence. Bustamante's Motion to Reverse or Remand Administrative decision, filed November 2, 2000, should be denied and this case dismissed.

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.